[No. 12234. In Bank. — September 5, 1889.]

# MARGARET A. ADAMS, RESPONDENT, *v.* O. D. LAMBARD, APPELLANT.

TRUST — AGREEMENT TO RECONVEY — CONFIDENTIAL RELATIONS — PAROL AGREEMENT — EVIDENCE OF CONSIDERATION — ENFORCEMENT OF TRUST. — When the owner of an interest in a mine stands in confidential relations to parties to whom he conveys such interest in full satisfaction of certain debts for which he and the former owner of the remaining interest in the mine are personally liable, in pursuance of a parol agreement that when the mine had paid to the grantees a sufficient sum for the reimbursement to them of the amount of the satisfied indebtedness, besides 'operating expenses, they should reconvey one half of the interest granted to the grantor, and a written agreement for such reconveyance is accordingly made at a subsequent date, expressing a consideration of one dollar, parol evidence is admissible to prove the original parol agreement, and to show the true consideration, both of the deed and of the written agreement, which together constituted one transaction, and upon the happening of the contingency provided for, a trust is created in favor of the grantor, which, being fully executed on his part, a court of equity will enforce.

ID. — ACCOUNTING OF INDEBTEDNESS — PURCHASE OF OUTSTANDING TITLE. — Upon an accounting of the indebtedness for which the grantees were to be reimbursed from the proceeds of the mine before reconveyance to the grantor, money paid by the grantees for the purchase of the remaining interest in the mine from a third party, to whom such interest had been sold prior to the agreement, cannot be considered as constituting any part of the indebtedness which the grantor undertook to pay by his conveyance.

ID. — ALLOWANCE OF INTEREST ON INDEBTEDNESS AND ADVANCES. — Since, under the facts of this case, the indebtedness no longer existed, but was paid for and discharged by the conveyance of the mine, and the working of the mine could not be compelled, it cannot be taken to be within the contemplation of the parties that interest should be allowed on the indebtedness, or on moneys expended in working the mine, upon an accounting of the indebtedness for which the grantees were to be reimbursed, especially in view of the fact that the agreement was silent as to interest, and that the creditor was to retain at all events one half of the grantor's interest after reimbursement, in consideration of the use of the money advanced.

ID. — CONVEYANCE IN FRAUD OF TRUST. — PERSONAL LIABILITY OF TRUSTEE. — When property held by a trustee is conveyed to an innocent purchaser for value in fraud of the trust, the trustee is personally liable for all moneys derived from the trust property.

ID. — EVASION OF ACCOUNTING — RIGHTS AND LIABILITIES OF TRUSTEE — COMPOUND INTEREST. — When the trustee is frequently requested to give an accounting of his trust, and continually evades it, without repu-

diating the trust, and finally, in violation of the trust, sells the trust property to an innocent purchaser, he is not entitled to any interest on his account, but may be charged with compound interest from the date of the sale.   Where the omission of a trustee is due to mere negligence, without fraudulent intent, simple interest alone is allowed to the *cestui que trust* on trust funds; but if the omission is willful, compound interest is allowed.

REVIEW ON APPEAL — NEW TRIAL — STATEMENT — STIPULATION — BOOKS OF ACCOUNT. — It is the duty of the party moving for a new trial to present a statement containing the grounds upon which he intends to rely, and so much of the evidence as may be necessary to explain the same, and no more; and the parties cannot, by stipulation that certain voluminous books of account shall be considered part of the statement, impose upon the supreme court the labor of their examination.

APPEAL from a judgment of the Superior Court of El Dorado County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*G. J. Carpenter, Prentiss Carpenter,* and *W. C. Belcher,* for Appellant.

*Fox & Kellogg, Charles F. Irwin,* and *George G. Blanchard,* for Respondent.

PATERSON, J. — This action was commenced by Horace Adams, plaintiff's testator, on September 2, 1880, for an accounting, and to compel the defendant to convey to him an undivided one-third interest in the Mount Pleasant mine.   When the plaintiff learned, from the answer to his complaint, that the defendant had conveyed the property to innocent purchasers, and that a specific performance of the contract to reconvey was impossible, he filed an amended complaint, alleging the value of the mine, and praying that if it should appear from the evidence that a specific performance could not be enforced, a judgment be entered against the defendant for the value of the property.   The history of the transactions involved is clearly and fully set forth in the findings of the court.   These findings show substantially the following facts: —

In 1868 the defendant and one Goss were engaged in carrying on a manufacturing and foundry business in the city of Sacramento; until the dissolution of the co-partnership of Goss & Lambard, Horace Adams continued to be an employee in their foundry, and his relations to the members of the firm were, and for a long time had been, and until after the dissolution of the partnership continued to be, of a close and confidential nature; Adams and Grissim were at that time, and for some time prior thereto had been, the owners of and in possession of the Mount Pleasant mine, and a twenty-stamp mill, hoisting-works, machinery, etc., situated thereon, holding the same under title acquired by valid locations duly made under the mining laws of the United States and of the district in which the mine was situate, but the mining claim had not then been patented; Adams was the owner of an undivided two thirds and Grissim the owner of an undivided one third thereof; Adams and Grissim were indebted to Goss & Lambard to a very large amount for milling and mining machinery, tools, etc., furnished for the use of the mining claims, and the firm held a lien under the mechanic's lien law upon the mine and mill for about sixteen thousand dollars of the indebtedness, and had commenced a suit for the foreclosure thereof; on June 27, 1868, and while the foreclosure suit was pending, Grissim conveyed his interest in the mine to one Waters; on July 23d, in pursuance of a parol agreement theretofore made between the parties, Adams, Grissim, and Waters executed and delivered to Goss & Lambard a deed of conveyance of the whole of the mine, and put them in possession thereof; at the time of this conveyance the indebtedness of Adams and Grissim to the firm amounted to the sum of $31,148.88; Goss & Lambard agreed, in consideration of the conveyance, and the conveyance was made, delivered, and accepted upon the condition, that in consideration thereof they should cancel the in-

debtedness of Adams and Grissim to them, and should pay, in addition thereto, other indebtedness of Adams and Grissim to an amount not exceeding five thousand dollars, and should also pay Waters for his interest in the mine the sum of ten thousand dollars cash, which like sum they then and there did pay; afterward, they paid, on account of the indebtedness of Adams and Grissim, to others such claims as were presented, not amounting in the aggregate to more than five thousand dollars; it was also agreed between the parties, and the deed and possession of the property were delivered upon the further condition, that Goss & Lambard should work and develop the mine according to their judgment and discretion, and without any unnecessary expense, and without any charge for their own services in the premises, and upon the further condition that whenever they had realized sufficient from the mine to reimburse themselves for the amount of the indebtedness of Adams and Grissim, together with the costs and expenses of caring for, operating, and working the same, they should reconvey to said Adams the undivided one third of the mining claim and property; on the eighteenth day of September, 1868, in pursuance of said agreement, and in completion of the transaction of which the delivery of the deed and the possession of the property under it was a part, the defendant Lambard and said Goss executed and delivered to Adams an agreement, in the following language:—

"Whereas, Leonard Goss and O. D. Lambard, on the 26th of July, A. D. 1868, purchased of Horace Adams, —— Waters, and W. T. Grissim, the Mount Pleasant mine, situated in Grizzly Flat, El Dorado County, and are now the sole owners of said property,—

"Now, this agreement witnesseth, that, in consideration of one dollar to them, the said Goss & Lambard, paid by H. Adams, the receipt whereof is hereby acknowledged, they hereby bind themselves, their heirs

and executors, to convey to the said Adams the title they now possess to one undivided one third of said property whenever the said property shall have canceled its indebtedness to them, and no indebtedness shall be incurred that is not strictly required, and neither the said Goss-Lambard shall receive any salary for attention to the business till the indebtedness is canceled.

"Witness our hands and seals this the 18th of September, A. D. 1868.                    "O. D. LAMBARD.

                                    "LEONARD GOSS."

In pursuance of this agreement, Goss and Lambard commenced to work and develop the mine, and continued the same until April 21, 1871, with varying success, when the firm of Goss & Lambard was dissolved; in the distribution of their partnership property, Goss conveyed his interest in the mine to the defendant, Lambard, who accepted the same with full knowledge of all the conditions of the agreements between them and Adams; Lambard continued to work, develop, and operate the mine with some interruptions, suspending the work at times to suit his own pleasure, until the thirtieth day of July, 1880, when, without consultation with or the knowledge of Adams, he sold and conveyed the same, and delivered the possession thereof for a valuable consideration to an innocent purchaser; while the defendant held the mining claim and property, he procured a patent therefor from the government of the United States for a distance of 3,635 feet along the lode, and 300 feet in width on each side thereof, and from the state of California for 200 acres of land adjoining the same, but all the mining ground covered by these patents was embraced within the tract known as the Mount Pleasant mine; these patents were procured in further assurance of and to protect the title acquired from Adams, Grissim, and Waters, and not in hostility thereto, and the defendant based his claim to the patents upon and received the same because of his claim to the

property under Adams, Grissim, and Waters; Adams at all times acknowledged that the legal title stood in Goss & Lambard, but at all times up to the commencement of the suit, which was commenced without a knowledge that Lambard had conveyed away the property, claimed that Goss & Lambard, and afterward Lambard, held the property, as to the undivided one third thereof, in trust, to be reconveyed to Adams as soon as and whenever Goss & Lambard should have realized sufficient from the total income from the property to reimburse them for the amount of the indebtedness of Adams and Grissim and the other advances agreed upon, including the expenses of operating the mine; Adams frequently requested the defendant for information as to the costs and disbursements and the income from the mine, and demanded an accounting thereof; the defendant never, to the knowlege of Adams, disputed his claim until after this suit was brought, but always made evasive replies, always postponed and never made any accounting, as requested; before the day of the sale and transfer of the mine and mining property he had received from the workings of the mine and the sale of bullion more than sufficient to repay the indebtedness and the costs and expenses of working the mine, and of improvements made thereon, and of procuring and protecting the title thereto; there had been received from sales of bullion $183,834.06, from sales of machinery $3,600, making a total of receipts in the sum of $187,434.06; the total amount expended in the working and improvement of the mine and procuring patents, traveling expenses, etc., is $148,403.37; the amount of the original indebtedness, which, with the expenditures the defendant is entitled to have deducted from the receipts, is the sum of $36,000, making a total of $184,403.37 to be deducted; the receipts and expenditures having been received and incurred from month to month, and from time to time, during all the period from July, 1868, to July, 1880, the court be-

low was unable from the accounts to fix exact periods of rest and strike balances at different times of receipts and expenditures; the value of the property on the thirtieth day of July, 1880, when defendant sold the same, was the sum of fifty thousand dollars. The court adds its conclusions of law to the effect,—1. That by the delivery and acceptance of the deed of July 23, 1868, all indebtedness of Adams and Grissim to Goss & Lambard was settled and canceled; 2. That by the terms and conditions of the conveyance, a trust was created in favor of Adams, whereby Goss & Lambard were to hold, operate, and manage the mine, as to the undivided one-third part thereof, as trustees, and were to reconvey the same to Adams as soon as they realized from the mine a sum of money sufficient to reimburse them for the indebtedness, in satisfaction of which the interest of Adams, and such interest as Grissim then had, was received, and for the further advances then agreed upon, amounting in the aggregate to thirty-six thousand dollars, together with the costs and expenses of operating and managing the same; 3. That when the interest of Goss in the property was conveyed to Lambard, Lambard had full knowledge of the trust, and the same passed to him fully charged therewith; 4. That immediately prior to the fifteenth day of July, at which time the court has found he had received from the mine an amount more than equal to all the indebtedness on account of which the interest of Adams and Grissim had been received, together with the expenditures made by him and the said Goss during the whole period in which they had managed the property, it was the duty of defendant to account to Adams, and pay over one third of the moneys which he had already received, less the indebtedness and expenditures aforesaid, and to convey an undivided one-third part of the mine to Adams; 5. That the patents did not vest the defendant with any title adverse to the title acquired and received under the deed of July 23,

1868, but that the defendant is entitled to have costs and expenses of procuring them allowed to him out of the income of the mine as a part of the expense of managing the same; 6. That inasmuch as the defendant, Lambard, in selling and conveying the property without the knowledge and consent of Adams, had been guilty of a violation of the trust under which he held the same, and a fraud upon Adams, and by that act had placed it out of his power to comply with the terms of the trust, and reconvey the undivided one third of the property to Adams, plaintiff became and is entitled to receive from the defendant the sum of $16,666.66,—one third of all the moneys derived from the income of the mine, over and above the sum of $184,403.37,—with interest thereon at the rate of seven per cent per annum, compounded annually from July 30, 1880, to the day of judgment. Upon the filing of these findings and conclusions of law a judgment was entered against defendant in favor of plaintiff, for the sum of $27,126.38, and costs taxed at the sum of $1,868.65.

The only important question upon which appellant and respondent appear to differ is the question whether the amount defendant had realized from the mine at the time he sold it was sufficient to cancel the indebtedness mentioned in the agreement. This question involves the inquiries as to whether the ten thousand dollars paid to Waters should be considered as a part of the "indebtedness," and whether interest should be computed on the account.

It is contended by appellant that the agreement of September 18, 1868, was without consideration,—was an independent transaction,—and that the court erred in its construction of the agreement, and in admitting parol evidence to explain it. Nevertheless, defendant disavows any intention to repudiate the agreement or deny any of the rights of plaintiff thereunder. It is admitted that the contract is to be construed in the light of the sur-

rounding circumstances, and that proof on that subject was proper, but it is claimed that the parol evidence introduced by the plaintiff went further, and accomplished a modification of the written agreement. It is conceded by all parties that the transaction between Adams and Goss & Lambard was not a mortgage, but that the deed conveyed the legal title to the latter parties. It is also conceded that the defendant was not bound absolutely to work the mine, but was at liberty to cease work whenever in his judgment it was impolitic or unwise to work it longer (respondent insisting, however, that, and correctly we think, if he did work it and receive back the amount of indebtedness, etc., defendant could not sell it), and that he had the right to sell the mine in good faith, if, after reasonable efforts, the proceeds of the mine should be insufficient to pay the indebtedness. The court found that the deed to and possession of the property were delivered "upon the further condition that the said Goss & Lambard should work and develop the said mine according to their judgment and discretion, and without any unnecessary expense, or any charge for their own services in the premises, and that whenever they had realized sufficient therefrom to reimburse themselves of the amount of the indebtedness to Adams and Grissim, together with the costs and expenses of caring for, operating, and working the same, they should reconvey to said Adams the undivided one third of said mining claim and property." The court has found, also, that the agreement of September 18th was made, executed, and delivered in pursuance of the parol agreement, and in completion of the transaction of which the delivery of the deed and possession under it was a part, and that it was not made without consideration, but was given as a part of the consideration for the deed.

There can be no doubt, we think, that parol evidence was admissible to prove the true consideration of both the deed and the agreement. The two constituted one

transaction.    Adams conveyed his entire interest in the
mine in full satisfaction of a debt, for which he and an-
other were personally liable, and he delivered possession
thereof and surrendered all control over the same.    Gris-
sim paid no part of the debt.    Adams paid it all.    To
the extent of Grissim's share of the debt, certainly, which
was one third, Adams had in effect paid the purchase
price allowed by Lambard for the property.    In consid-
eration of that fact, and of the further fact that the whole
purchase price was to be returned out of the property,
and an interest in the mine retained by Lambard, the
latter agreed that as soon as he had realized sufficient
from the property to cancel the indebtedness for which
it was received, with the costs of management, he would
convey to Adams an undivided one half of the property
so received from him.    The consideration for the agree-
ment was certainly a valuable one, and there was not
merely a part performance, but a full performance, on
the part of Adams, and upon the subsequent happening
of the contingency provided for, a trust was created in
favor of Adams.    If it be conceded *that the rights of the
parties turned upon the agreement of September 18, 1868,*
the court was correct, considering the *confidential rela-
tions of the parties* and the nature of the transaction, we
think, in finding the existence of a trust and enforcing
it.    Adams had fully executed the trust, and the contin-
gency had arisen under which Lambard had promised
to reconvey.    Under such circumstances a court of
equity will enforce the trust.    (*Brison* v. *Brison,* 75 Cal.
525; *Thomas* v. *Jameson,* 77 Cal. 91; *Sandfoss* v. *Jones,*
35 Cal. 481; *Hearst* v. *Pujol,* 44 Cal. 230; *Janes* v.
*Throckmorton,* 57 Cal. 368; *Love* v. *Watkins,* 40 Cal.
547; 6 Am. Rep. 624; *Estate of Webb,* 49 Cal. 541; *Bost-
wick* v. *McEvoy,* 62 Cal. 501.)    There is nothing in
*Feeney* v. *Howard,* 79 Cal. 525, in conflict with this view.

It is claimed by appellant that the finding of the court,
to the effect that the amount received by defendant from

the mine prior to his sale thereof was sufficient to cancel the indebtedness, is not supported by the evidence. This contention seems to be based largely upon the condition of the account, as shown in the books of the Mount Pleasant mine, kept by the defendant. It is said that these books are part of the *res gestæ,* and furnish *prima facie* evidence of the facts stated therein. Upon the evidence contained in the record, we think that the finding of the court is amply supported. We have no means of knowing what opinion the learned judge of the court below entertained of the books kept by the defendant. It may be that they were entirely discredited. It is contended by the respondent that the books show upon their face that they had been made up for the purposes of the trial; that the receipts and returns correspond in number with the number of entries made upon the loose fly-leaves presented, but do not correspond in dates or amounts; that there is not an instance in which the weight of shipment and weight of receipt correspond. As to the truth of these contentions, on either hand, we do not purpose to investigate. It is true, the parties have stipulated at the end of the statement "that the original books of account of the Mount Pleasant mine, given or offered in evidence on said trial, may be exhibited and used by either party, or upon motion for new trial herein, or in the supreme court on appeal, without further identification, and with the same force and effect as if the same had been fully incorporated in this statement; and that if any inaccuracies are discovered in the foregoing statement, purporting to be collated from said books, the same may at any time be corrected according to the books." This is a very convenient way of making a statement, but it places a burden upon this court which, notwithstanding the fact that it is agreed to by all the parties, we decline to assume. It is the duty of the party moving for a new trial to present a statement containing the grounds upon which he intends to rely,

and so much of the evidence as may be necessary to explain the same, and no more. The parties have presented for our consideration the books of the Mount Pleasant mine, kept by the defendant, twenty-six in number, covering a period of twelve years, and representing transactions amounting in value to hundreds of thousands of dollars. We do not feel called upon to perform the labor the examination of these books would impose upon us.

We think the court properly refused to allow, as a part of the moneys which defendant was authorized to deduct from the income of the mine, the ten thousand dollars paid to Waters for his one-third interest. Waters had become the owner of an undivided one third in the mine. Of course Grissim's interest, which Waters acquired, was subject to its proportion of the lien claimed by Goss & Lambard, but the purchase seems to have been an independent transaction,—one not in any way connected with the real purpose of the transaction between Goss & Lambard and their debtors, Adams and Grissim. The deed, it is true, was executed by Waters as well as by Adams and Grissim; but Goss & Lambard knew that Grissim had no interest in the property at the time he joined in the deed. The ten thousand dollars paid to Waters we think constituted no part of the debt which Adams undertook to pay off by conveying his two-thirds interest in the mine. It does not seems to have been contemplated in the negotiations leading up to the final adjustment of their affairs. The court below evidently believed, from all the circumstances surrounding the transaction, that the parties did not understand Adams was to buy any outstanding one third of the mine for Lambard, or to allow the latter to purchase it and figure the purchase price in the amount of indebtedness which he, Lambard, was to be reimbursed for before Adams could receive anything in return. The indebtedness referred to in the contract was the indebt-

edness of Adams and Grissim, and not the indebtedness which Lambard might incur by purchasing an outstanding title.

We think the court properly refused to allow the defendant interest on the amount of the indebtedness or moneys expended in working the mine. As said in *Tirrell* v. *Jones,* 39 Cal. 655: "As we construe the contract, it was not within the contemplation of the parties that the defendant was to charge interest on the money to be advanced by him." It is conceded by all parties that the indebtedness was paid by the conveyance of the property, and it is also conceded that the defendant was not bound absolutely to work the mine at all, and that he was at liberty to cease the work whenever in his judgment it was best to do so. Therefore, the debt no longer existed as a subsisting debt; Adams took the risk of losing his interest in the mine, which rested upon their disposition to work the mine, without reserving to himself any power to compel them to do so; it does not seem reasonable to suppose that Adams intended to take the risk of allowing an accumulation of interest on the thirty-six thousand dollars of indebtedness until principal and interest had grown to an indefinite amount. Furthermore, it was for the advantage of Goss & Lambard to recover back their principal sum in the manner agreed upon as quick as possible, and secure the one-third interest in the mine without cost to themselves, except the use of their money. We think that, where the agreement is silent as to interest, and where the creditor secures the property of the debtor under such circumstances, no interest should be allowed; especially where, as in this case, in addition to paying the indebtedness out of the property, and all advances made thereon, the creditor is to retain an interest in the property in consideration of the use of the money advanced. The court has found that the defendant, in fraud of the rights of the plaintiff, and without the knowledge of the

latter, sold and conveyed the property, and delivered possession thereof for a valuable consideration to an innocent purchaser; that the plaintiff frequently requested the defendant for information as to the costs and disbursements, and the income from the mine, and demanded an accounting thereof, but that the defendant, without notifying the plaintiff of any intention to claim the property as his own, always made evasive replies, always postponed, and never made any accounting as requested. Under these circumstances he was not entitled to any interest on his account, and the plaintiff was entitled to compound interest after the date of the sale of the mine by defendant. (*Hollinshead* v. *Simms*, 51 Cal. 163; *Tyler* v. *Granger*, 48 Cal. 259; *Tirrell* v. *Jones*, 39 Cal. 655.) It is a general rule that, where the omission of the trustee is due to simple negligence, without any actual intent to cheat or defraud, simple interest alone is allowed the *cestui que trust* on the trust funds; but if the omission is willful, compound interest is allowed. (Tiffany and Bullard on Trust and Trustees, 593; *Lathrop* v. *Smalley*, 23 N. J. Eq. 192; *State* v. *Howarth*, 48 Conn. 207.)

We have fully considered the other points made upon this appeal, and find nothing in any of them warranting a reversal of the judgment.

Judgment and order are therefore affirmed.

McFARLAND, J., SHARPSTEIN, J., and WORKS, J., concurred.

THORNTON, J., and BEATTY, C. J., dissented.

Rehearing denied.