BERKELEY HALL SCHOOL, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47415.   Promulgated January 24, 1935.

*Ralph W. Smith, Esq., Girard F. Baker, Esq.,* and *L. A. Luce, Esq.,* for the petitioner.

*C. H. Curl, Esq.,* for the respondent.

1118

OPINION.

LEECH: The petitioner is a corporation which owned and operated a school for children of persons in Los Angeles, California, who were interested in Christian Science. It was about to discontinue this school in 1923 because of a lack of necessary facilities. When the parents of some of the students of the school learned of its proposed discontinuance they discussed the situation among themselves and finally adopted a plan to secure necessary real estate and a sufficient sum of money to provide and perpetuate in Los Angeles a school for children of persons interested in Christian Science. In order to obtain the real estate and the necessary cash this group of parents planned to obtain a tract of land, retain a plot for the school, and subdivide and sell the remaining lots at a sufficient profit to create the fund desired. The Bank of America was named as trustee to purchase the property, subdivide it, sell and convey the lots, and finally to transfer to the petitioner the plot retained for the school and the fund realized from the profit in the sale of the lots. The petitioner understood this plan and was party to it. The petitioner was called a "beneficiary" of the trust of which the bank was trustee. But it was thoroughly understood by all intersted parties that when the petitioner should receive the plot of ground and the net proceeds from the sale of the lots it would receive these things, not for its own use and benefit, but in a fiduciary capacity only. These net proceeds were turned over to the petitioner by the bank in 1925. The Commissioner has determined the present deficiency in the income tax of this petitioner on the theory that these net proceeds received by the petitioner in 1925 represent income to the petitioner in its ordinary corporate capacity.

Petitioner contends that it is personally exempt from income tax under section 231 (6) of the Revenue Act of 1924 [2] as a corporation "organized and operated exclusively for educational purposes no part of the net earnings of which inures to the benefit of any private shareholder or individual." This position is untenable. Petitioner is a private corporation, organized for profit. The mere fact that it has not distributed its earnings to its stockholders is not controlling. It has such right and there is nothing which precludes its exercise. Consequently it is not entitled to the exemption provided.

[2] SEC. 231. (6) Corporations, and any community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

*James Sprunt Benevolent Trust*, 20 B. T. A. 19; *Journal of Accountancy, Inc.*, 16 B. T. A. 1260. Cf. *Bowers* v. *Slocum*, 20 Fed. (2d) 350; *Sand Springs Home*, 6 B. T. A. 198; *Young Men's Christian Association Retirement Fund, Inc.*, 18 B. T. A. 139; *The Jockey Club*, 30 B. T. A. 670.

But the taxability of this fund in petitioner's hands, on the facts here disclosed, must be resolved by the application of other principles. Respondent has proposed and is insisting upon the pending deficiency against petitioner, not as trustee, but in its individual capacity. Cf. *Mary M. Shea*, 31 B. T. A. 513. Thus, none of the fund in dispute is taxable here, unless received by this petitioner for its "separate use, benefit and disposal", *Eisner* v. *Macomber*, 252 U. S. 189, and subject to its "unfettered command." *Corliss* v. *Bowers*, 281 U. S. 376. Obviously, the funds supporting the present deficiency had no such character in petitioner's hands.

It appears clear upon careful consideration of the record that the fund in question represents the voluntary contribution of the organization of parents of the students at petitioner's school, and the result of the labors of these parents in effecting sales of lots under a plan conceived and carried out by them. The purpose of this plan was the establishment and maintenance, in perpetuity, of a school for children under the influence of the Christian Science faith. This purpose and plan of the parents was definitely understood by petitioner. Petitioner paid no money. The petitioner was used only as a convenience in carrying out the plan. The only consideration passing from it for its receipt of the disputed funds and the real estate was petitioner's agreement to accept them in accordance with that plan and purpose. That this property and presently disputed proceeds were so received by petitioner is further supported by the evidence of the action taken by petitioner immediately thereafter. These proceeds, always kept in a separate account from petitioner's individual funds, were, from the time of their receipt, administered by a committee representing the organization of parents interested in the plan. The petitioner and the parents' organization attempted to effect the charitable object through the appointment of the Christian Science Church as a permanent trustee of the property and fund, as soon as received. Following failure in that effort, they continued to perfect the necessary arrangements to secure the use of the property and fund in perpetuity for the purpose specified.

Respondent proposes the present deficiency against petitioner as "beneficiary" of such a trust as is described in the Revenue Act of 1928, section 704 (b), *supra*, which is said to conclude us here because of its retroactive application. But "beneficiary", as there

used, has its ordinary and generally understood meaning in the law of trusts, which does not include petitioner on the present record. See *Theodore P. Grosvenor*, 31 B. T. A. 574; *Percy H. Clark*, 31 B. T. A. 1082; *Franklin Miller Handly*, 30 B. T. A. 1271. Petitioner has never treated this fund or property as its own. It did not receive either of them for use in its individual corporate purposes. All of petitioner's disclosed actions indicate an understanding on its part that its receipt and holding was, not in its individual corporate capacity, but as trustee of a trust created for the purpose of providing and perpetuating a school for the children of students and friends of Christian Science. This was a juristic, charitable trust of which indefiniteness of the beneficiaries is characteristic. *Russell* v. *Allen*, 107 U. S. 163; *In re Graham's Estate*, 63 Cal. App. 41; 218 Pac. 84. If and when petitioner receives compensation from this trust for the operation of the trust's school, another and different tax question arises.

It is true that the title as taken by this petitioner to the real estate was by an absolute transfer and not one expressing a trust. However, the rule appears clear in California that in the case of such a transfer, whether of real or personal property, if made with the understanding on the part of the grantee of the property that it will be held in trust for definite private purposes, and such understanding or agreement is the consideration for the transfer, its use for any purpose other than that agreed upon will be restrained by a court of equity under a constructive trust declared. *Cooney* v. *Glynn*, 157 Cal. 583; 108 Pac. 506; *Lauricella* v. *Lauricella*, 118 Pac. 430; *Hayne* v. *Hermann*, 97 Cal. 259; 32 Pac. 171; *Simons* v. *Bedell*, 122 Cal. 341; 55 Pac. 3; *Brison* v. *Brison*, 75 Cal. 525; 17 Pac. 689; *Adam* v. *Lambard*, 80 Cal. 426; 22 Pac. 180; *Alaniz* v. *Casenave*, 91 Cal. 43; 27 Pac. 521; *Hays* v. *Gloster*, 88 Cal. 560; 26 Pac. 367; *Butler* v. *Hyland*, 89 Cal. 575; 26 Pac. 1108. The same result would follow here where such agreement was to hold in trust for a public or charitable purpose. Political Code of California 1923, art. 8, secs. 470, 472; General Laws of California 1931, Acts 8698, 8699, 8700, 8701; *Long* v. *Union Trust Co.*, 272 Fed. 699; affd., 280 Fed. 686. Thus, even if respondent were proceeding against this petitioner, as trustee, the fund, the subject of the pending deficiency, would probably be exempt under the Revenue Act of 1924, section 231 (6), *supra.*

Consequently, if petitioner attempted to distribute this property or fund to its stockholders or to devote it to any other purpose than that intended and clearly understood, it could have been restrained from doing so. *A fortiori*, it can not be held here that receipt of any

part of this fund or property represented income to petitioner. *Freuler* v. *Helvering*, 291 U. S. 35.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

---

SEAWELL, dissenting: I am unable to agree with the conclusion reached by the Board under what appears to me to be the plain undisputed facts of this case.

In 1923 petitioner was a private corporation conducting a school for profit. What other powers and privileges it had do not appear, as its charter was not offered in evidence. It needed for the school more space and added facilities. The Rodeo Land & Water Co. owned 77.3 acres of land which it wished to sell. Petitioner did not need all of the land for the school and it did not have the capital to buy the whole tract. Some of its friends agreed to guarantee to a bank payment of certain loans it needed for money with which to make certain advance payments on petitioner's contract to purchase the land. The Rodeo Land & Water Co. agreed to sell the land to petitioner. The loans from the bank were never made and the guarantors were never liable for any sum on account of their agreement. A scheme was worked out whereby petitioner was enabled to purchase the land without outside aid. A Mr. Gilchrist, a friend of the school, a realtor, surveyed, platted, and subdivided the land. A contract was entered into by the Bank of America, designated as trustee, the Rodeo Land & Water Co., designated trustor, and petitioner, designated beneficiary, in which it was recited that the trustor had agreed to sell to the beneficiary said land for $462,180, and that $100,000 thereof had already been paid by the petitioner from advanced sales of lots. Petitioner was to pay the remainder of the purchase price from the sale of other portions of the land, and petitioner was to bear the expense of laying out and grading the streets, the installation of water mains, telephone and electric poles, and other development costs. The trustee itself made no payments and none of the guarantors or the trustee at that time or any time thereafter made any payment on the purchase price of the land. The land was placed in the hands of the trustee in order to secure the payment by the beneficiary to the trustor and to facilitate the transfer of title to lots sold by the beneficiary. The scheme was carried out. The trustee held the funds received from the sale of lots; paid the expenses of Gilchrist for making the subdivision; paid itself for the acceptance of the trust

$250 and certain percentages on the sale price of lots executed by it. and a closing fee of $250 and paid and discharged the obligations of the petitioner, the beneficiary, to the Rodeo Land & Water Co., the trustor; then the trustee quitclaimed the schoolhouse lot and other portions of the 77.3 acres and paid the profits on the sales, more than $100,000, to the petitioner.

The property turned over to petitioner was not a gift and therefore is includable in gross income and section 213 (b) (3) of the Revenue Act of 1924, relied on by petitioner, is not applicable. The further provision of law, section 231 (6), relied on by petitioner, also is not applicable because the net earnings of petitioner inure to the benefit of the private shareholders of petitioner.