## Kezia A. Barnes v. James H. Brown.

*Rescission of deed: Fraud: Consideration: Evidence.* In this case, which was a bill to obtain the rescission of a deed from complainant to defendant as procured by fraud and without consideration, the complainant claiming it was procured by representations of defendant that she was in danger of losing by a note she had signed as surety for her husband on the purchase of a patent-right, and upon his suggestion that the note was a fraud, and that by deeding her farm to defendant and his openly paying her the balance of the purchase price over and above a mortgage he already had on the land, which she might afterwards secretly return to him, she would be able to put herself in a position to avoid payment of the patent-right note, and that this suggested course was in fact pursued, and the defendant insisting on the other hand that the purchase was a fair one, made in good faith, and that the purchase money paid in presence of the scrivener was never repaid to him, it is held that the preponderance of the evidence considered in the light of the surrounding circumstances favors the claim of the complainant.

*Fraud: Defense: Rescinding deed.* The active party in procuring such a conveyance for his own benefit cannot be protected by his own dishonesty in leading the other party into such measures to save herself from what he himself assured her was a fraud.

*Fraud: Voluntary acts: Relief: Extortion: Fiduciary relations.* While a court of equity will not usually aid any one against a voluntary act in fraud of the law, it is equally averse to allowing a person to profit by any instrument which is extorted by exciting false alarms or threats of legal consequences when there is such a relation of confidence as gives one a special power over the other.

*Married women: Surety for husband's debt: Fraud: Equal wrong.* Moreover, there was here no liability in fact of the complainant upon the note she had signed as surety merely for her husband's debt; and there being no creditor who could attack the transaction, it was not void, and was only blameworthy for an intention in which defendant is more guilty than complainant. They are not in equal wrong.

*Fraud: Parties not in equal wrong: Confidential relations.* Relief will not be denied to the party least in fault against one who has led her into the act by a violation of confidence.

*Heard April 29.   Decided June 8.*

Appeal in Chancery from Allegan Circuit.

*Littlejohn & Hart,* for complainant.

*J. W. & O. C. Ransom* and *Jacob Ferris,* for defendant.

CAMPBELL, J:

Complainant filed her bill to obtain the rescission of a

deed made June 19, 1868, to defendant, without consideration. The facts are so directly contradictory that there is some difficulty in getting at the truth. There are some facts undisputed, and some on which there is a radical disagreement.

The case on which complainant relies is substantially this: In October, 1867, she gave defendant a mortgage for one thousand dollars on her farm, occupied by herself and husband. This mortgage ran for eight years, payable in small yearly instalments.

In the spring of 1868 her husband bought an interest for Allegan county in a patent-right for a hay-fork, and gave his note for four hundred dollars. She was induced afterwards, but probably about the same time, and perhaps the same day, to sign the note with him. Not long afterward defendant advised complainant she was likely to lose by it, and that it was probably a fraud.

In June, 1868, complainant visited Grand Rapids (which was twenty-four miles from her home), to dispose of some wool. During that visit she conveyed the farm to defendant by warranty deed, subject to the mortgage, for a consideration named therein of one thousand dollars. She says that the first suggestion came from him at that time; that she was stopping at his house, and that he introduced the subject of the patent-right note, and told her she ought to fix her property so that she need not have to pay it; that he asked if she could not convey it to one of her children, but on her answering in the negative, he proposed, after some talk about its value, that she should convey it to him at a nominal price of two thousand dollars, and that he should openly pay the amount beyond the mortgage, and she should privately return it to him, and he would hold the property until the patent-right difficulty should be disposed of, and then re-convey; that a deed was drawn by Mr. Sinclair, a justice of the peace, and the sum of nine hundred dollars paid over to complainant in his office, and restored to defendant after returning to his house, where he

also went through the form of pointing out a lot of cloth-
ing, for the remaining one hundred dollars, without any
selection or delivery.

. Complainant claims that this ended the arrangement. No
change was made in the occupation of the property, until,
just before the bill was filed, in the spring of 1873, he served
a notice to quit, in general terms, and specifying no cause.
In his answer he claims it was for default in rent. In the
next year after the purchase the dwelling was burned, and
rebuilt, and there is a conflict as to the part taken by de-
fendant in regard to rebuilding it.

The defendant's version of the transaction is, that in the
spring of 1868, while he was on a passing business visit at
complainant's house, a bargain was made to sell it to him
for two thousand dollars, including the sum secured by his
mortgage, of which he was to pay one hundred dollars in
clothing, and the balance in money. He further states
that complainant was to come to Grand Rapids, and that the
deed was made to carry out that bargain when she came,
and the payments were made, and not returned; and that
the complainant and her husband (until he sold) were to
retain possession as lessees at two hundred dollars a year and
taxes, he being at liberty to sell when he might choose to
do so.

There are many collateral facts put in evidence, but their
only value is in the bearing they have on the main issue.

It is impossible to be entirely sure concerning the true
state of the case. There are inconsistencies in the stories of
both parties, and in their testimony. But we are compelled
to form a judgment upon the facts, which are all in the
form of depositions, and to decide according to what we
regard as the probabilities, as shown by a preponderance of
evidence.

The complainant and her husband appear to be persons
of about the usual business knowledge of those who have
started in poverty, and, after reaching the time of declining
years, are still struggling, with a farm of moderate value, and

encumbered to what defendant claims was half its value, and what was at any rate between a third and a half of it. The defendant is a business man of more than average sharpness, who had dealt for several years with complainant's husband, and advised him in his affairs, and had been known to both, and frequently visited them on his business journeys, and had lent them, or otherwise furnished the sum for which he held the mortgage. From the name he goes by, of "Jockey" Brown or "Dicker" Brown, it would seem that his business was somewhat miscellaneous, and that he was not wanting in shrewdness at a bargain, and his age and surroundings indicate a wide experience. These things are to be regarded in considering the conduct of the parties, where their habits and business ways may explain their acts. And in the clashing of proofs it becomes very necessary to scrutinize the motives and acts of all.

The first inquiry naturally presenting itself is, what reason was there for selling the farm. It appears that complainant was industrious, and had been gaining steadily, though slowly, in her means of livelihood, and that the household depended more on her than on her husband. There is nothing to indicate that any change of residence had been thought of. The value of the farm, according to defendant's method of purchasing, was at least two thousand dollars in cash, and was much more than this according to other witnesses; and the land must at any rate have been worth considerably more on time. There had been no attempt to sell the farm before, and no consultation with defendant or any one else about its value. The sale, whether we accept the statements of complainant or those of defendant, was made very suddenly,—made without any attempt to find purchasers on better terms, and without any occasion for money, or any avowed plan for removing elsewhere. And it was made for less than its admitted cash value, to the extent of the portion payable in goods, and made in view of a rent which, for a mere tenancy at will, was exorbitant.

Such a sale is not usual, and shows that the vendor must have been moved by some very strong motive to make a conscious sacrifice, or else could not have been very careful, and must have acted on some hasty impulse.

The only thing which appears to have given the complainant any uneasiness was the note she had signed for the patent-right purchase. This was not then due, and would not be for some time to come; and it was not until defendant had excited her fears and persuaded her that she was in danger, that she felt any alarm on the subject. Defendant represents that no reason was given him at the time the sale was proposed to him, and no reference was had to the note.

It appears that he had been consulted about business matters before, and it seems very improbable that any sale could have been made to him under the circumstances which he describes, without some question asked or reason given, when the price was allowed to be fixed by defendant, and was actually set at a sum which was very low, and not satisfactory, and fixed by a rule that, to say the least, is not very common. It is not usual to fix the value of farming lands by a ten per cent. rental value, with taxes added to the rent; and a representation that this was the proper mode of valuation, when made by a purchaser who knew his opinion would govern, would have been one of doubtful honesty. That complainant, who was already paying only interest on one thousand dollars, should have desired to sell out and pay interest on twice that sum for the use of the same farm, with no apparent occasion for investing the money balance, and without actually investing it, seems hardly credible. There was no reason for concealing anything from defendant, and no reason why he should not and would not have inquired fully into the reasons of sale before he purchased. The transaction, as he describes it, is improbable. But the evidence renders it highly probable, if not certain, that complainant never possessed any considerable sum of money after the conveyance. It is also certain

that during this long interval of about five years, when defendant was, according to his story, entitled to two hundred dollars a year rent, he never urged its payment, and took no steps to demand or collect it. This course is intelligible if he had a mortgage, as he was well secured and might have reckoned on getting the land at last; but if he supposed himself the unquestioned owner, there is nothing in the case to show there was any delay asked or granted for benevolent purposes, and there is no explanation of this conduct.

With all these surroundings complainant's story is the most plausible. She claims to have conveyed the land at defendant's suggestion, and that a low price was named in the deed at his wish, in order that it might appear as if he had driven a hard bargain, which he claimed would seem more likely to others, than that he had in good faith paid a fair price. He had aroused her fears about the patent note, and urged her to put the title in him, where it would not only be safe from creditors, but also beyond her reach, unless she could bring evidence which would controvert the unfavorable inferences naturally to be drawn from the course which was adopted. If he meant to defraud her, he could not have adopted a shrewder course than she says he did. The money was paid openly in the presence of the officer who drew the deed, and all that took place in the way of bargaining was without witnesses. It was apparently the release of an equity of redemption for an actual consideration sufficient to support it. And it seems likely that defendant understood perfectly well the advantage that he had gained. If he really paid the consideration, then her story is untrue. If the payment was colorable, and she returned it, then her story is to be accepted.

The payment was to consist of about nine hundred dollars in cash and one hundred dollars in clothing. Defendant in his sworn answer says, Mrs. Barnes took forty dollars worth of clothing at the time, and the rest was furnished subsequently. In his testimony he says, she took none at the

time, and that the complainant's husband took the amount out of a bill subsequently delivered, the balance of which he was to sell on commission. The bill produced is a mere list of articles with footings, including a subsequent invoice sent on commission, amounting to over two hundred dollars. No deduction or credit is made from the total, and the fact that any of the goods were sent in payment of the one hundred dollars is denied. If so sent or intended, it should have appeared on the bill, or by credits or vouchers. As for the money payment, the testimony of complainant is very positive that it was returned, and the fact that she appears to have had no large sums of money thereafter, and the evidence concerning her circumstances, all go to indicate the truth of her statement. Her story is fully borne out by evidence from other members of her family, but the witnesses are all so deeply interested that the circumstantial corroboration is much more satisfactory.

A circumstance of no small importance is the fact that defendant retained complainant's notes given with her mortgage, and gave her no receipt or voucher whatever. The whole proceedings were so far out of the common course of business that if the transaction was an honest one on defendant's part, it shows an amount of ignorance and carelessness concerning complainant's rights, not in keeping with the caution used throughout to preserve all evidence necessary for his own protection. And it may also be remarked that in honest dealings where there is such an ostentatious showing as to the payment of a part of the consideration, it is usual to have the whole transaction witnessed, and to give some voucher for the amount held back.

We cannot resist the belief that defendant procured the conveyance to himself, and evaded giving any evidences of the purposes for which he held it, under a false pretext that it would compromise the defendant's safety, and with the real design of defrauding her eventually out of her land; and that the possession was left with her to carry out the same purpose, and to gain the advantage of the presump-

tions raised in equity against parties who sleep on their rights.

The question, however, arises and was earnestly pressed, whether complainant is in a position to complain of conduct where she was herself in fault.

If we assume, as we think the record shows, that defendant undertook to advise her, and she acted upon his advice, the circumstances do not show complainant to be very much to blame. The whole suggestion that the patent note was a fraud came from defendant, and his advice to her to avoid it was coupled with strong assertions of this fraud. It would not be very strange if any ignorant woman should be induced by an apparently friendly adviser in whom she had confidence, both as a friend and as a man of business, to follow his advice implicitly without going elsewhere for counsel. If her story is true at all, the whole affair must have been brought about under immediate pressure, and in haste, and was not supposed by her to be any more than a proper safeguard against a dishonest claim. It would be going very far to hold that the active party in procuring such a conveyance for his own benefit could be protected by his own dishonesty in leading her into such measures to save herself from what he himself assured her was a fraud. A court of equity will not usually aid any one against a voluntary act in fraud of the law. But equity will not usually allow a person to profit by any instrument which is extorted by exciting false alarms or threats of legal consequences, when there is such a relation of confidence as gives one a special power over the other. This was not intended to defraud honest creditors. There were no creditors to defraud, and there was no debt on which complainant was liable at all. And if no creditor could attack the transaction it was not void, and was only blameworthy for an intention in which defendant is more guilty than complainant. Relief will not be denied to the party least in fault against one who has led her into the act by a violation of confidence.—See *Ford v. Harring-*

*ton, 16 N. Y., 285,* and cases there cited.    They are not in equal wrong. .

The decree below must be reversed, and a decree entered in this court for the complainant, with costs of both courts.

The other Justices concurred.