OLIVE P. WOOLEY v. ELIZABETH P. DREW AND JOHN F. DREW.

*Reversal for preponderance of testimony—Setting aside unconscionable bargain.*

The rule that a decree will not be reversed for mere preponderance of testimony where it was granted on proofs taken in open court so that the trial judge could observe the demeanor of witnesses does not apply where even the proofs of the prevailing party show that it should not have been made.

Where a conveyance of land was obtained in exchange for property of about half its value by taking advantage of the grantor's ignorance and unfounded apprehensions that if he did not convey, it would be taken on a judgment, the transaction was *held* to be unconscionable and the conveyance was set aside.

Appeal from Jackson. Submitted October 6. Decided October 18.

BILL to set aside deed. Complainant appeals. Reversed.

*Grove II. Wolcott* for complainant.

*Gibson, Parkinson & Ashley* and *A. & C. A. Blair* for defendants.

MARSTON, J. Complainant comes into court to compel the defendant Elizabeth P. Drew to re-convey a certain eighty acres of land, which complainant conveyed to her in 1879 under an alleged promise to reconvey in two years thereafter.

The complainant's theory is that a certain slander suit was pending against her husband; that he had previously conveyed the farm to her; that defendant John F. Drew "excited complainant into the belief that she would lose her homestead, unless she made a conveyance of it to Mrs. Drew;" and that in consequence thereof the conveyance was made.

The defendants deny all this and claim that the sale made was in good faith for a valuable consideration, and made at the earnest solicitation of complainant and her husband.

The case was heard upon the pleadings and proofs taken in open court, and the bill dismissed. The complainant appealed.

If the complainant's theory is sustained, the case comes within *Barnes v. Brown* 32 Mich. 146, and she is entitled to relief.

Where the witnesses have been examined in open court, and the case is one that must be governed by the credibility of the witnesses for the respective parties and the weight to be given their testimony, the conclusion arrived at by the court below should not, upon what might seem to this Court a mere preponderance of testimony, be overturned. This case does not however come within that class, where the appearance of the witnesses upon the stand can be given any decisive effect, as the transaction, when viewed upon the defendant's testimony, shows that it was one so fraudulent and barefaced that it could not be permitted to stand.

The complainant and her husband were uneducated, and they seemed to have had a good deal of trouble with their neighbors, while the defendant John F. Drew seems to have had, or claimed to have, considerable knowledge pertaining to legal matters.

The complainant and her husband at the time the conveyance was made, evidently were afraid, that because of the slander suit they were in some danger of losing this farm, and that the plaintiff in that suit and other parties were conspiring against them to cheat them out of their property. Whether these ideas were suggested to them for the first time by John F. Drew, as complainant claims, or not, we do not deem it necessary to determine. It is certain that defendants did not make any effort to allay these fears, or to assure complainants that their property could not be attached in the slander suit, or they be enjoined from transferring their farm because of the pendency thereof. On the contrary these impressions were strengthened and the trade consummated within a very short time—a few days after being first mentioned or thought of between the parties.

The complainant's farm contained 80 acres, with suit-

able buildings and improvements thereon of the value of $3200, upon which there was an incumbrance of one hundred dollars, and it had also been leased for one year from April, 1879, the rent to be paid in a share of the crops.

When the complainant and her husband at the house of defendants talked of selling, the defendant John F. offered to give them for their farm a mortgage held by his wife upon a certain house and lot in the city of Jackson which defendants say the complainant and her husband were ready and willing to accept, and wished to have the necessary papers executed at once, but which defendants put off for a couple of days to enable them to make an examination of complainant's title to the farm. On making this examination the next day, they for the first time ascertained that there was an outstanding mortgage thereon for one hundred dollars, and they also, before the trade was consummated, learned that the farm had been leased for one year with the privilege of an additional year.

The parties met the following day, and defendants say they did not then wish to make the exchange, yet the defendant John F. had procured the necessary blank form of conveyance, and after some little talk defendants then agreed to assign the mortgage referred to, and accept a conveyance of the farm subject to the mortgage thereon and give complainant a two years' lease of the same, although no such favorable terms were asked for by complainant: and the trade was so made, defendant John F. drawing all the papers and taking all the acknowledgments, his wife assigning the mortgage and acknowledging the execution thereof before him.

This mortgage bore date March 1st, 1872; was given by Julia A. Knowles to Sylvester McMichael to secure the payment of $951.49 in three years from the date thereof, with ten per cent. interest payable semi-annually, according to a certain bond bearing even date therewith.

Defendant John F. Drew had a second mortgage upon this same property which he foreclosed and bid in at the sale, and afterwards his wife, at his request, took an assign-

ment of the Knowles-McMichael mortgage, the assignment bearing date December 17, 1873.

At the time of the assignment to Mrs. Drew, nothing had been paid upon this mortgage, and no payment of either principal or interest was made thereafter up to the time of the assignment to complainant. John F. Drew was the owner under his foreclosure proceedings of the mortgaged premises, receiving the rents and profits thereof.

At the time of the assignment thereof to complainant, defendants represented the amount due thereon at about $1900. We suppose the computation was made under the act of 1869, which allows interest on installments after due. Whatever the fact may have been however as to the amount claimed to be due and collectible thereon, the mortgaged premises were not considered by the defendants as sufficient to pay the mortgage; they were not indeed worth more than $1600, and would not bring near that at a public sale. It was the assignment of this mortgage that complainant received for her farm, with a two years' lease thereof.

There are some other peculiarities worth noting. Complainant's farm was about seven miles from the residence of defendants. Some ten or twelve years previous to this trade, defendant John F. Drew "went down hunting on the marsh across that farm," and at this time he did not know who was living on it. He had not been to the farm after that, until a few days before the trade, when he went down to complainant's house to see about hiring a girl, and did not then look over the farm, as he then had no thought of purchasing it. At the time he examined the title, he inquired of the register of deeds what kind of land this was, and says "I thought that his recommend and my memory corresponded." This was the extent of defendant's knowledge as to the kind or quality of the soil, or the improvements thereon or value thereof.

The mortgage which he assigned to complainant had been acquired by his wife after he became the owner of the mortgaged premises, and another peculiarity, although according to the recitals in the mortgage, a bond purported

to have accompanied it, and to have been assigned to complainant according to the written assignment, yet neither complainant nor Mrs. Drew seems to have ever seen or possessed this bond. True it is, that complainant did not. receive or have any personal obligation for the amount. represented by the mortgage assigned her or any part thereof. And if the transaction was an honest one, why the defendants should not have conveyed the premises to complainant, they being of far less value than the mortgage, instead of the latter, it is difficult to conjecture, thus putting her to the trouble and expense of foreclosing the same before she could realize a dollar thereon, unless it was to enable John F. Drew, as owner of the mortgaged premises, to receive the rents and profits thereof to his own use. This he did, but was not generous enough to pay any part thereof to complainant, as she did not receive anything, either principal or interest, upon the mortgage. The assumption that this course was taken to prevent the collection of any judgment that might have been recovered in the slander suit, is not satisfactory, as the mortgage could have been reached just as easily as could the premises had they been conveyed to the complainant.

It is indeed much more probable that this mortgage was transferred to Elizabeth B. Drew at the request, and for the use and benefit, of her husband, the owner of the premises, and that it was not at any time thereafter considered as an existing incumbrance, or the bond accompanying the same, if assigned, an existing obligation against the mortgagor, as no effort seems to have at any time been made to collect principal or interest thereon although long past due.

The defendants claimed and took the crop of wheat growing on complainant's land at the time the exchange was made, although it was far from clear what right they had thereto, under the lease given by them to complainant. .

Indeed the whole case shows that however fair the transaction may have seemed to be on the part of defendants, yet it was fair upon the surface only, and would not bear investigation; it was much like a subsequent agreement

made between complainant and Elizabeth B. Drew, in reference to the latter not taking any farther steps to obtain possession, which as given by one of defendant's witnesses is worth quoting. When asked to state a conversation he heard between the parties after this difficulty arose, the witness testified :

" I think about the first that was said after Mr. and Mrs. Wooley came in, Mrs. Drew says, 'I promised you this morning I would do nothing further in this matter in relation to the farm until I saw you again ; I have seen you now, she says; that cancels the agreement;' or something like that."

A careful examination of the entire record leaves no doubt in our minds as to the substantial correctness of the complainant's version, and the transaction on the part of defendants has been so clearly unconscionable, and their course in endeavoring to take advantage of the complainant's fears to obtain a conveyance of a valuable farm, for a very questionable security of doubtful value, was so clearly fraudulent that a court of equity cannot sanction the same by permitting them to enjoy the fruits thereof.

The parties must therefore be restored to their original positions.

The decree below will be reversed with costs of both courts, and the complainant will have a decree in this Court in accordance herewith.

The other Justices concurred.