[Civ. No. 439.   Third Appellate District.—March 4, 1908.]

## JOEL CHAMBERLAIN, Respondent, v. WILLIAM M. CHAMBERLAIN, Appellant.

CONSTRUCTIVE TRUST—CONVEYANCE TO DAUGHTER IN LAW—DECEIT AND FALSE PROMISES—ENFORCEMENT AGAINST SON AS DONEE—NOTICE. Where the wife of plaintiff's son induced plaintiff to convey his property to her, with a pretended large consideration, but without consideration in fact, by means of a false representation that certain parties were about to sue a corporation in which plaintiff was a stockholder, which would involve his personal liability, and by means of a promise made by her to reconvey the property to him upon demand, without any intention of performing the said promise, and which she refused to perform, she became a constructive trustee of the plaintiff, and where, prior to her death, the title was passed to her brother without consideration, who subsequently conveyed it to her husband, the son of plaintiff, without consideration, the constructive trust is enforceable against him in equity, regardless of whether he had or had not full notice of the fraud practiced by his deceased wife upon the plaintiff.

ID.—INTENT TO PRESERVE PROPERTY FROM CREDITORS—ESTOPPEL OF FRAUDULENT DONEE.—*Held,* that there was no sufficient evidence of the intent of the plaintiff to defraud any creditor, and that no creditors of his appear to have been defrauded in fact; but that, conceding the intent of plaintiff to preserve his property from possible sequestration by any creditor, the donee, who fraudulently procured the conveyance under the circumstances appearing, was estopped to take advantage of any intended wrong of plaintiff as to third persons.

ID.—VOLUNTARY TRANSFEREES SUBJECT TO ORIGINAL TRUST—ESTOPPEL LIMITED TO BONA FIDE CLAIMANTS.—Voluntary transferees claiming under the defrauding party took title subject to the original constructive trust chargeable against her, and cannot claim protection under the doctrine of estoppel, which is limited to *bona fide* claimants who have parted with value without notice of the fraud.

ID.—PLAINTIFF NOT CHARGEABLE WITH LACHES.—What will constitute such acquiescence and laches on the part of a plaintiff as to bar relief in equity must largely depend upon the peculiar circumstances of the case. *Held,* that there is no reason in this case for the application of the doctrine of laches where the appellant has lost nothing by the plaintiff's delay in bringing the action.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.  H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

E. S. Van Meter, H. K. Harris, and D. E. Perkins, for Appellant.

F. H. Short, and A. M. Drew, for Respondent.

BURNETT, J.—The action was brought to have certain land in Fresno county, consisting of eighty acres, adjudged to be held in trust for the use and benefit of plaintiff and to have it conveyed to him in accordance with the terms of the said trust.  In 1895 plaintiff conveyed this land to E. J. Chamberlain, the wife of the defendant, William M. Chamberlain, by deed of grant, bargain and sale, naming $3,000 as the consideration, though it is admitted that there was in fact no consideration, appellant, however, claiming in his answer that there was a gift of the property to the said E. J. Chamberlain.  The parties named, at the time mentioned, for some time prior thereto and for several years thereafter, resided together on the land in question.  Their relations were of a friendly and confidential character.  At the same time, plaintiff was the owner of certain shares of stock in a corporation known as the Mill Race Ditch Company.  This company had become involved in controversies with certain land owners, and suits were pending against the company.  Under these circumstances, according to the allegation of the complaint, "on or about the 13th day of April, 1895, the said E. J. Chamberlain, with intent to deceive and defraud this plaintiff, and for the purpose of procuring the legal title to the said premises, did represent, assert and say to the said plaintiff that certain parties whose true names are to plaintiff unknown, were about to commence a suit against the Mill Race Ditch Company for certain indebtedness due from the said corporation to the said parties; that the said E. J. Chamberlain did then and there advise the said plaintiff to convey the said premises to her and did agree then and there that if the said plaintiff would so con-

vey the said premises that she would, upon demand, re-
convey the said premises to the said plaintiff; . . . that
each and all of said statements and representations made
by the said E. J. Chamberlain to the plaintiff were false and
fraudulent, and made with the intent to deceive and defraud
the plaintiff.''

This averment of the complaint really presents the vital
point in the case. It is contended by appellant that plaintiff
relied upon such representations at his peril, and that a
conveyance in accordance with the said agreement with E.
J. Chamberlain would not create a trust enforceable in a
court of equity. It is said that ''Unless there was such fraud
practiced by E. J. Chamberlain, or such undue influence
exercised by her upon the plaintiff in inducing him to con-
vey the land to her as would make her an involuntary trus-
tee, the relation of trustee could not, and would not, exist.
Her verbal promise to hold it in trust would not make her
a trustee''; citing section 852 of the Civil Code; *Russ* v.
*Mebius*, 16 Cal. 357; *Feeney* v. *Howard*, 79 Cal. 325, [12
Am. St. Rep. 162, 21 Pac. 984]; *Hasshagan v. Hasshagan*,
80 Cal. 514, [22 Pac. 294].

We understand that respondent agrees with appellant that
the case must fail unless the allegations of the complaint
and the evidence disclose such fraud or undue influence as
to create a constructive trust or one by operation of law,
and no fault is found with the authorities cited by appellant,
but only with the application of them attempted to be made
to the particular facts of this case. The claim is made by
respondent, in other words, that we have here the trust con-
templated by subdivision 3 of said section 852 and recog-
nized in said cases cited by appellant. For instance, in the
Russ case, *supra*, it is held that ''where a son conveys real
estate to his father—the only consideration being a verbal
agreement by the father to make a will and devise to the
son certain property, and the father dies without having
complied with the agreement, the agreement is void, the con-
veyance is executed without consideration, express or implied,
and a trust results in favor of plaintiff by implication of
law, and he may set aside the conveyance and recover the
property,'' and the doctrine is asserted which must be ac-
cepted as well settled that ''unless there be evidence of fraud
or mistake, the recitals in a deed are conclusive upon the

grantee, and no resulting trust can be raised in his favor in opposition to the express terms of the conveyance.''

The decision in the Feeney case is based upon the ground that there was no actual or constructive fraud. The court says: ''For all that appears to the contrary, Michael Feeney's deed may have been given and received in entire good faith.''

In the Hasshagen case it is held that ''in order to entitle respondent to recover, it was necessary for her to prove that the trust attempted to be established was created or declared in writing or by operation of law,'' and that nothing was shown to take the case out of the statute; and besides, that the original intent and purpose of the grantor conveying the property was to hinder and defraud his creditors, and hence there was the strongest reason for the application of the statute of frauds.

But here the allegation is that certain representations were made by the grantee, that they were false and made with intent to deceive plaintiff, and that he relied upon the representations and promises, and therefore executed the conveyance. The case is thus brought within the terms of section 1572 of the Civil Code, providing that ''Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract. 1. The suggestion, as a fact, of that which is not true by one who does not believe it to be true. . . . 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive.'' And as to the relation thereafter sustained to the property by the one obtaining such an advantage section 2224 of the Civil Code provides that ''One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.'' The only possible objection, then, to the scheme of the complaint lies in the suggestion that it gives rise to the inference that plaintiff's purpose in conveying the property was unlawful or immoral, and hence that he does not come into court with clean hands and cannot justly invoke the interposition of equity. We think it is sufficient

to say that it does not affirmatively appear from the complaint that plaintiff's purpose was to defraud any creditor. The indebtedness of the corporation, it is true, in which he was a stockholder is alleged as one of the inducements for the conveyance, but we must indulge the presumption that his intention was consistent with a prudential regard for his own interest as well as with the utmost good faith toward his creditors. Especially should this position be taken in view of the importunities of the grantee and the fact that there is no evidence that any creditor was actually defrauded.

Turning to the proceedings of the trial, we find in the testimony of the plaintiff sufficient support for said allegation and the corresponding finding of the court. The plaintiff testified: "She said, 'You better make the ranch over in my name, for the ditch company was in debt and they would be liable to come on to it and take the whole ranch, and if I didn't look out I would lose my ranch and she would make the deed back to me after the indebtedness was settled.' I deeded it to her, so that I could have, if the company ever come on to me, that I could have longer time to pay up the indebtedness, but then I never deeded it to put the company out anything." The subsequent conduct of the grantee justifies the inference that she made the statement and promise to the plaintiff with the intent to deceive and mislead him. Hence, a case of actual fraud was made out. Again, the age of the plaintiff and the confidence he reposed in the grantee are sufficient in connection with other evidence to justify the charge of constructive fraud. The fact that she was his daughter in law is not of itself sufficient to prove the fiduciary relation, but this is an important circumstance, and there is substantial support in the record for the conclusion that she became the involuntary trustee of plaintiff, as she certainly assumed "a relation of personal confidence" with him.

Even conceding that in making the conveyance plaintiff was influenced somewhat by a desire to preserve his property from sequestration by the creditors of the corporation, still giving full credit, as we must, to the evidence favorable to the judgment of the court below, we cannot find in that circumstance alone sufficient reason to disturb the findings. We are bound to accept as true that E. J. Chamberlain importuned plaintiff to convey the property to her upon the

assurance that she would reconvey it on demand, that she made the promise with the intent to deceive him, and that he had confidence in her representations, and therefore executed the deed. It follows, we think, upon the clearest principles of equity that she could not take refuge behind the pretense that in yielding to her solicitations he committed a wrong against others, thereby depriving him of any redress for her gross misconduct. The law is more indulgent to human infirmity and less tolerant of deliberate and obtrusive depravity. A cannot lay a trap for B, secure his confidence, induce him to make a conveyance of his property in the expectation that it will be returned, and thereafter retain the fruits of his perfidy on the ground that B too readily yielded to temptation to save himself at the possible expense of creditors. The greater offense of the tempter overshadows and renders innocuous the weakness of the one of whom advantage is taken.

For further illustration of the principles herein involved we refer to the following cases: *Brown* v. *Burbank,* 64 Cal. 99, [27 Pac. 940] ; *Brison* v. *Brison,* 75 Cal. 525, [7 Am. St. Rep. 189, 17 Pac. 689] ; *Broder* v. *Conkling,* 77 Cal. 330, [19 Pac. 513] ; *Adams* v. *Lambard,* 80 Cal. 426, [22 Pac. 180] ; *Brison* v. *Brison,* 90 Cal. 323, [27 Pac. 186] ; *Alaniz* v. *Casenave,* 91 Cal. 41, [27 Pac. 521] ; *Hayne* v. *Hermann,* 97 Cal. 259, [32 Pac. 171] ; *Crosby* v. *Clark,* 132 Cal. 1, [63 Pac. 1022] ; *Moore* v. *Moore,* 133 Cal. 489, [65 Pac. 1044] ; *Faylor* v. *Faylor,* 136 Cal. 92, [68 Pac. 482] ; *Nobles* v. *Hutton,* 7 Cal. App. 14, [93 Pac. 289].

The views we have thus expressed render it unnecessary to discuss at length the other points made by appellant.

It is claimed that the evidence fails to support that part of finding No. 3 to the effect that plaintiff requested E. J. Chamberlain to reconvey said premises. He so testified substantially when he said: "I wanted my daughter in law to make the ranch back to me, and she wouldn't. She turned it off and went away. I think some two or three times I had a talk with her about making it back to me, and she rather put me off and she wouldn't do it—put me off." The foregoing is obviously sufficient, although the finding itself is immaterial. It would not aid appellant if plaintiff made no demand upon E. J. Chamberlain for a reconveyance.

Again, it is contended that there is insufficient support for the finding that "William Chamberlain had full knowledge of all the facts of the verbal agreement between plaintiff and the said E. J. Chamberlain, and that he knew she took and held the title in trust." William Chamberlain, however, did testify that he knew the circumstances why the deed was made, though denying that he heard anything said about the place being deeded back. But the court was not bound to accept the latter statement. Giving full credit to the testimony of the plaintiff as to the circumstances surrounding the transaction, it would be justified in concluding that the defendant knew that his wife agreed to reconvey. But, again, assuming that the issue is raised by the denial in the answer, "that said defendant and William M. Chamberlain, on or about the 13th day of April, 1895, or at any other time had *full* knowledge of said alleged verbal agreement between plaintiff and said E. J. Chamberlain," it would seem to be without decisive significance in view of the fact that appellant was not a purchaser for value. There is no apparent reason why a voluntary transferee, whether with or without knowledge of the circumstances under which his grantor was clothed with the legal title, should not receive the property charged with the original trust. The principle of estoppel has no application as in case of a purchaser or encumbrancer for value in good faith without notice.

Complaint is made also of the finding that "all the allegations of defendant's answer are untrue." Appellant is right in his contention that the evidence shows an indebtedness of the corporation at the time plaintiff deeded the property to E. J. Chamberlain, but there is testimony that the corporation was perfectly solvent, and there is no showing that any creditor was defrauded. Under the circumstances, if the finding had been that this allegation of the answer is true the result would not be changed. Even conceding that plaintiff desired to protect his property against seizure by creditors of the corporation, appellant should not be permitted to set this up as a defense, as we have seen, in view of the evidence and finding as to the actual fraud of said E. J. Chamberlain.

Again, it is contended that the court committed error in overruling an objection to the testimony of a witness as to

a declaration of appellant in reference to a former convey-
ance of the property to the effect that if he had the place
over again he wouldn't deed it back. This might be some
evidence of animus toward the plaintiff, and was probably
admissible for that purpose as affecting the credibility of ap-
pellant, but if erroneously received it could hardly have
been prejudicial, as it is a circumstance of little importance.

Again, it is contended that plaintiff should not have pre-
vailed on account of his long delay in bringing suit, as equity
abhors a stale claim and it is incumbent upon the plaintiff
to show facts excusing his delay in asserting the fraud.
(*Truett* v. *Onderdonk,* 120 Cal. 581, [53 Pac. 26] ; *Harring-
ton* v. *Patterson,* 124 Cal. 542, [57 Pac. 476] ; 2 Pomeroy's
Equity Jurisprudence, sec. 817.) In the Truett case it is
doubtful whether there was any fraudulent acts shown; there
was an unexplained delay of fourteen years, and it was held
that the court below properly exercised its discretion in deny-
ing the relief claimed.

*Harrington* v. *Patterson* presents the case of rescission of
a contract of purchase, and in accordance with the provisions
of the statute it is held that the party who claims to have
been defrauded must act promptly after the discovery of the
fraud.

Pomeroy states the conditions under which acquiescence
may prevent the right of equitable relief as follows: "The
acquiescence must be with knowledge of the wrongful acts
themselves and of their injurious consequences; it must be
voluntary, not the result of accident, nor of causes render-
ing it a physical, legal or moral necessity, and it must last
for an unreasonable length of time, so that it will be inequi-
table even to the wrongdoer to enforce the peculiar remedies
of equity against him, after he has been suffered to go on
unmolested and his conduct apparently acquiesced in," and
he adds that "It follows that what will amount to a sufficient
acquiescence in any particular case must largely depend upon
its own special circumstances."

But there is no reason here for the application of the doc-
trine of laches. The appellant has lost nothing by plaintiff's
delay in bringing the action. It is not a case of rescission,
but of forbearance to press a right to demand performance
of an agreement, which indulgence has inured to the benefit

7 Cal. App.—41

of appellant, who longer than he had a right to expect has enjoyed the bounty of plaintiff.

Upon an examination of the whole record we find no prejudicial error, and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.