HENRY W. S. PALMER, APELLANT, v. MARY J. PALMER, APPELLEE.

FILED JANUARY 15, 1917. No. 18925.

Fraudulent Conveyances: RELIEF IN EQUITY. He who seeks equity must come into court with clean hands, and where a conveyance of land was made without consideration in order to defeat a judgment in an anticipated suit for divorce and alimony, a court of equity will not lend its aid to the fraudulent grantor to set aside the conveyance, but will leave the parties as it finds them.

APPEAL from the district court for Dundy county: ERNEST B. PERRY, JUDGE. *Affirmed.*

*W. C. Dorsey* and *David G. Hines,* for appellant.

*J. L. Rice* and *W. S. Morlan, contra.*

LETTON, J.

This action was brought to set aside a conveyance of 320 acres of land made by the plaintiff to his mother, Mary J. Palmer. The district court found that 160 acres of the land was the family homestead of plaintiff, at the time it was conveyed; that his wife did not join in the deed, and the conveyance was therefore void. As to the other tract, the court found generally for the defendant. From a decree based on these findings, plaintiff appeals.

Summarized, the petition alleges that shortly before September, 1902, the plaintiff's wife deserted him without just cause, and that, while he was prostrated both physically and mentally on account of her conduct, his mother solicited and advised him to convey to her the 320 acres of land, stating that, unless such a conveyance were made, the plaintiff's wife might deprive him of all his property and leave him and his minor children destitute; that he yielded to his mother's influence, and, relying on her statements and promises, he made a conveyance of the land to her without any consideration, and intended only to vest the title in her as trustee for himself, and upon her express promise to reconvey to him on his demand; that the land was then worth $4,500; that no consideration was paid; that he has ever since been the owner of the land, paying taxes, and keeping up the improvements, and has been in the open, notorious, exclusive and adverse possession of the premises for more than ten years last past. He pleads the homestead character of 160 acres; that the conveyance constitutes a cloud upon his title; and prays for relief.

In substance, the answer alleges that at the time the conveyance was made the plaintiff intended to obtain a divorce from his wife and deprive her of all interest in his property; that he feared that his wife would file

a cross-petition asking for alimony and would obtain a judgment; that he had been guilty of cattle stealing and feared that a judgment would be rendered against him by the owners of the cattle he had stolen; that he was without money, and, in order to hinder, delay and defraud his wife and the owners of the cattle and to obtain funds for use in the divorce suit and criminal prosecution, he induced his father, who is now deceased, to purchase the land, the consideration being that his father should cancel about $500 indebtedness and pay about $2,500 more, and that plaintiff should convey the land to whomsoever his father should direct; that his father was indebted to defendant, and in payment of the same directed a conveyance to be made to her. It pleads the payment of a consideration to plaintiff, the abandonment of the homestead, the expenditure of money upon improvements on the lands, and that defendant had been in the exclusive and adverse possession of the land ever since the execution of the deed. The reply denies the new matter in the answer, and pleads the payment of a judgment for alimony.

We are satisfied the evidence does not sustain the defense of a purchase by the father and conveyance to the mother by his direction in payment of a debt. It is clear that one tract was the homestead, and that the attempted conveyance of this was void since the wife did not join in it.

Shortly after the conveyance was made the plaintiff was taken to Lincoln and confined in the Nebraska penitentiary upon a charge of cattle stealing. He was released upon parole, when he returned to Dundy county and remained there until this suit was begun. His father's lands, those belonging to him, and other lands were inclosed with a fence constituting the home ranch. The plaintiff worked with his father upon the ranch until the latter's death in 1907, and since that time until about a year before the beginning of the suit he seemed to have conducted the business of the ranch, with or for his

mother, signing checks in her name, selling cattle, and acting as business manager generally. Apparently no attempt was ever made to dispossess him of the premises, and, so far as the record shows, since his father's death he has been in receipt of the income from the property, but it was treated as the income from the other ranch property was.

We are satisfied from the evidence that the original intention of all the parties at the time the deed was made was that the land should be conveyed in order to put it out of the reach of the wife of plaintiff in case she should file a cross-petition for divorce, and that the district court was right in holding that the plaintiff does not come into a court of equity with clean hands. But it is shown that after his father's death plaintiff released and conveyed all his interest in his father's estate to his mother, the defendant in this case, and there is proof that the land was considered and spoken of by defendant as "Will's land." There was no adverse possession by either party.

From a consideration of the evidence, we have arrived at the same conclusion as did the district court. The action is not a possessory one, but is merely to quiet title. The possession of the land seems to be in the plaintiff, and while the judgment in this action does not remove the cloud from the title to 160 acres of the land, on the other hand it does not give the defendant any right to possession. In such a case a court of equity will not lend its aid to either party, but will leave matters as it finds them.

The judgment of the district court is therefore

AFFIRMED.