## DRAKE v. THOMPSON et al.

(Circuit Court of Appeals, Eighth Circuit. September 21, 1926.)

No. 7241.

1. **Appeal and error ⬅═927(2)—Decree of dismissal raises presumption that finding for defendant should be sustained, in absence of serious mistake of fact or erroneous view of law, though record contains no findings.**

Decree of dismissal for want of equity raises legal presumption that finding ought not to be disturbed, unless record clearly shows serious mistake of fact or erroneous view of law, notwithstanding that record contained no findings.

2. **Fraudulent conveyances ⬅═174(3)—Grantor, who deeded land to fiancée with intent to hinder creditors, held not entitled to have deed set aside.**

Plaintiff, who to hinder creditors deeded land to fiancée without consideration, held not entitled to have such deed or her deed to her brother set aside.

3. **Deeds ⬅═210.**

Evidence held to show that consideration for deed to fiancée was not engagement to marry grantor.

4. **Fraudulent conveyances ⬅═174(3).**

Deed delaying and hindering creditors, given in consideration of love and affection and promise of marriage, will not be set aside, though grantee did not marry grantor.

5. **Trusts ⬅═94.**

Grantee's oral promise to reconvey on grantor's request did not raise constructive trust, being mere attempt to create express trust.

6. **Trusts ⬅═17, 18(5).**

Oral promise of grantee to reconvey land held void under statute of frauds in Nebraska.

7. **Deeds ⬅═211(4)—Evidence held to show that neither grantee nor her brother induced or persuaded grantor to make gratuitous conveyance.**

Evidence held to show that neither grantee nor her brother induced or persuaded grantor to make gratuitous conveyance, and that there was no fiduciary relation between grantee's brother and grantor, or undue influence by former.

8. **Fraudulent conveyances ⬅═271(½).**

There is presumption that grantor was not induced to make gratuitous conveyance to delay creditors by fiduciary relation or undue influence of grantee's brother.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by Frank D. Drake against Sarah Thompson and others. From a decree dismissing the bill, complainant appeals. Affirmed.

William E. Shuman, of North Platte, Neb. (Matthew A. Hall, of Omaha, Neb., on the brief), for appellant.

J. J. Halligan, of North Platte, Neb. (R. H. Beatty, of Brady, Neb., and V. H. Halligan, of North Platte, Neb., on the brief), for appellees.

Before SANBORN, Circuit Judge, and SCOTT, District Judge.

WALTER H. SANBORN, Circuit Judge. This appeal questions the decree of dismissal of a bill in equity brought by Frank D. Drake against Sarah Thompson, John R. Thompson, and the Iowa Savings Bank, Estherville, Iowa, to set aside a deed of section 3 in township 16 north of range 28, in Lincoln county, Neb., made by Drake to the defendant Sarah Thompson in January, 1922, a deed of this section 3 made by Sarah Thompson to John R. Thompson in January, 1925, and a mortgage of this section made by John R. Thompson to the Iowa Savings Bank on March 31, 1925, to secure the payment by Thompson to the bank of $13,968.66.

The complainant, Drake, alleged in his bill the execution and recording of these deeds and this mortgage without any consideration; that Sarah Thompson was a sister of John R. Thompson, who was a bachelor, and that she and another sister lived with him in Minnesota; that in December, 1921, and January

and February, 1922, he and Sarah Thompson were engaged to be married; that he was a farmer of little business experience, and John R. Thompson was about ten years his senior and a successful farmer and business man, in whom he placed implicit confidence, and to whom he looked for advice and friendship; that he was visiting in the home of John R. Thompson and Sarah Thompson during those months, and that during that time, and on January 19, 1922, John R. Thompson induced and persuaded him to deed this section of land to Sarah Thompson without any consideration, and assured him that at any time he desired Sarah Thompson would convey the land back to him; that he continued his visit until the end of February, 1922, and the engagement to marry continued until about February, 1923; that John R. Thompson caused a deed from Sarah Thompson to himself of this land to be made without any consideration, and to be recorded in January, 1925; and that the mortgage of this land to the bank was made and caused to be recorded by John R. Thompson after the lis pendens in this suit had been duly recorded.

The defendants John R. Thompson and Sarah Thompson filed a joint answer to this bill, wherein they denied that John R. Thompson exercised any undue influence on or advised the complainant to execute his deed of the section in controversy to Sarah Thompson, denied that either of them stated that she would reconvey the section to him, and alleged that such an oral promise, if made, was void and unenforceable under the statute of frauds of the state of Nebraska, as an attempt to establish an express trust in real estate by parol. They alleged in their answer that at the time the complainant made the deed he was engaged in a controversy with Edward McPherrin, and feared that McPherrin would bring actions against him, procure a large judgment against him, levy upon his land, and cause him to lose it, that he owed one D. B. McNeal about $2,500 on a promissory note, which he and McPherrin had signed, that McNeal threatened suit on that note, that he had made promissory notes with McPherrin to others, and that he was afraid that the holders of these notes would get judgments against him, levy upon and take all his property to pay these debts, and he made this deed to Sarah Thompson a gift to her to prevent his losing his property to his creditors.

The answer of the Iowa Savings Bank set up the same defenses as did the answer of the Thompsons, and the further defense that the mortgage was made to it for a valuable consideration, and that the bank was an innocent purchaser of the lien of its mortgage. The bank prayed for a dismissal of the complainant's bill, and that, if the deed from the complainant, Drake, should be set aside, the court should adjudge that the bank had a first and valid lien on the section under the mortgage to it. The District Court below adjudged by its decree that the bank's prayer, that the mortgage to it "be decreed to be a valid lien upon said land, be and the same hereby is denied for want of equity," and the bank has not appealed, so that, unless the decree against the complainant is reversed, no farther consideration in this court of the right or interest of the bank is invoked.

[1] The record in this case brought to this court contains no findings of fact by the District Court relative to the respective claims of the complainant, Drake, and those of the defendants, John R. Thompson and Sarah Thompson—nothing but its decree "that the bill of the complainant is dismissed for want of equity." But this decree is sufficient to raise the legal presumption that the finding of the court below in favor of the defendants ought not to be disturbed, unless the record clearly shows that it made some serious mistake of fact, or was guided in its action by some erroneous view of the law.

The pleadings and the evidence leave no doubt of these facts: When the complainant in January, 1922, deeded this section of land to Sarah Thompson, he also deeded to her section 9, another section in Nebraska which he owned, and both deeds were recorded at the same time. At that time he and Sarah Thompson were engaged to be married, and he and Edward J. McPherrin had been engaged together in buying and selling cattle and land for five to eight years, had become indebted to those with whom they had dealt to a large amount, had signed promissory notes to some of them, and had made a written agreement of settlement between themselves in August, 1921. In January, 1922, when the deeds to Sarah Thompson were made, the complainant, Drake, was legally liable to the Bank of Logan County, Neb., on one of these joint notes to pay $3,600, and to one McNeal on another such note to pay about $2,500. Drake claimed that McPherrin had agreed to pay these notes, and after much litigation the courts held several years later that McPherrin was primarily liable, and Drake was liable on them as surety. But there is no doubt that Drake was legally liable in 1922 to pay these notes to the bank and McNeal respectively. On January 5, 1922, the attorney for McNeal wrote complainant, Drake, that McNeal had sent to him a note

signed by him and McPherrin, that McPherrin claimed he could not pay it, and that it would be necessary to commence suit upon it at once unless some arrangement was made to take care of it. On January 19, 1922, the complainant, Drake, executed two deeds, one for section 3 and the other for section 9, to Sarah Thompson, and sent them to the register of deeds for recording, with instructions to mail them after recording to Sarah Thompson, and they were so mailed. Miss Thompson had not asked for these deeds, or suggested that they or either of them should be made to her. When the complainant suggested to her that he deed the land to her, she suggested that he deed it to his mother; she told him that the conveyance of the land to her would not make her marriage to him more probable. He told her that he and her brother John advised conveyances to her, and she finally said, "Well, whatever you think will be all right with me." After these deeds were made and recorded the complainant continued his visit in the home of John R. Thompson and his sister Sarah until the last day of February, 1922, when he went to Nebraska, where he and his mother have since lived, and are still living on this section 3. When he left, John R. Thompson, in the presence of Sarah, asked him if he wanted a deed back for those lands, and he said, "No; I don't think that is necessary." Thompson said, "Well, something might happen to you." He replied, "Well, if anything happens to me, I would rather Sarah would have it than any one else;" and John R. Thompson replied, "That would be all right; just as long as I live, that will be all right."

In June, 1922, the complainant visited Sarah Thompson again while she was ill in a hospital, and she said to him that those deeds bothered her, that they bothered her all the time when she was sick, that she was afraid that, if anything should happen to her, he would have a hard time, and he promised her he would take them back, and fix it so that they would not bother her any more. In March, 1923, the complainant again visited Miss Thompson for a few hours, and asked her to make a deed of section 9 to his sister or mother, and at his request she made a deed of that section to his sister, Mrs. Ambler, after he had left and mailed it to Mrs. Ambler. He never asked Miss Thompson to convey section 3 back to him.

[2] There is other testimony upon this subject, but none that raises any doubt that the fact was that the complainant made the deeds of these lands to Sarah Thompson with intent thereby to hinder and delay his creditors,

and to deprive them of the use of these lands to pay his debts, or any doubt that the complainant is barred from an avoidance by a court of equity of his deed of section 3 to Miss Thompson by the familiar maxims of equity that "he who comes into equity, must come with clean hands," and "he who has done inequity shall not have equity," and the established principle and rule of property that a grantor who has conveyed his real estate to a grantee to delay or defraud his creditors, without consideration, or without other consideration than love and affection, may not by suit in equity avoid the conveyance or recover the property from the grantee or his assigns. Peintner v. Barnes, 247 F. 443, 445, 446, 159 C. C. A. 497; Dent v. Ferguson, 132 U. S. 50, 64, 66, 68, 10 S. Ct. 13, 33 L. Ed. 242; Pigg v. Casper Co., 196 F. 177, 179, 180, 116 C. C. A. 9; Byrd v. Hall, 196 F. 762, 764, 117 C. C. A. 568; Sturges v. Portis Mining Co. (D. C.) 206 F. 534, 537; Palmer v. Palmer, 100 Neb. 741, 161 N. W. 277.

[3, 4] From this conclusion counsel for complainant, Drake, seek to escape in several ways. They contend that the consideration for the deed of section 3 was the engagement of Sarah Thompson to marry the complainant. But the evidence is conclusive that she was engaged to marry him before and after the deed was made, and that before it was made she suggested that he make the deed to his mother, and expressly told him that the deed to her would not make her marriage to him more probable. Moreover, if the deed had been made in consideration of his love and affection for her and of her promise of marriage, those considerations did not relieve the complainant of the fatal bar to his recovery in equity, raised by his inspiring and controlling purpose by his deeds to put his real estate beyond the reach of his creditors. While it is probable that he would not have conveyed the land to Miss Thompson if she had not been engaged to marry him, the evidence leaves no doubt that he would have conveyed it to some one whom he thought would hold it for him beyond the reach of his creditors. Peintner v. Barnes, 247 F. 443, 445, 446, 159 C. C. A. 497; Sturges v. Portis Mining Co. (D. C.) 206 F. 534, 537—cases in which debtors conveyed their property to their wives for love and affection to delay and defraud their creditors.

Another contention of counsel for the complainant is that he is entitled to the avoidance by a court of equity upon his bill of this deed to Sarah Thompson and her deed to John R. Thompson, because, when his deed to her was made, John R. Thompson occupied

a fiduciary relation to him, and by undue and improper influence induced and persuaded him to convey his land to Miss Thompson, and that he assured him that at any time he desired she would convey the land back to him. But there are several reasons why this position is untenable:

[5, 6] First. The oral promises of the defendants or either of them that the land would be conveyed back to the complainant on his request did not raise a constructive trust, but were mere attempts to create an express trust, and by the established rule of property in Nebraska where the land was situated they were void under the statute of frauds because they were not in writing. Kiser v. Sullivan, 106 Neb. 454, 184 N. W. 93; Randall v. Howard, 67 (2 Black.) U. S. 585, 17 L. Ed. 269.

[7] Second. The evidence is conclusive that Sarah Thompson did not, by word, deed, wish, or influence, induce the complainant to make either of the deeds to her, that she objected to taking them, took them only because the complainant told her that her brother John and he thought it was the best way to do, that in June, 1922, she complained that they bothered her all the time while she was sick, that she was afraid, if anything happened to her, he would have a hard time, and he then promised to take them back, and that in March, 1923, at his request, she deeded section 9 to his sister, and he had never asked her to deed section 3 to any one. Under this state of the facts, the complainant's deed to her was not voidable in equity at the suit of the complainant, and it conveyed to and vested in her all his right, title, and interest in section 3, and her conveyance to John R. Thompson in January, 1925, vested that right, title, and interest in him.

Third. The evidence fails to convince that John R. Thompson, through any fiduciary relation to the complainant or by any undue influence over him, persuaded him to make the deed of section 3 to Miss Thompson. The complainant testified that he was about 35 years old, and John R. Thompson was 10 or 12 years older, in December, 1921, when he went to Thompson's home and visited 3 months; that he had been engaged in cattle raising and buying and selling lands with Edward J. McPherrin for 8 or 10 years, they had agreed on a division of their joint property, they were heavily in debt, but he had $4,000 in the bank and owned the two sections of land in Nebraska. He testified that he found John R. Thompson had secured about 10 farms by his own efforts; that he was a wealthy man, who traded in lands, and was interested in a bank; that he regarded him as

a friend and adviser; that, after he received the letter from McNeal's lawyer that he was about to sue him on the McNeal note, he showed it to Thompson and asked him what he should do, and Thompson said that the best thing he could do was to get everything out of his name, so that McNeal could not bother him; that Thompson asked him if he had any money in the bank, and Drake told him he had about $4,000, and Thompson said, "Bring it up here to my bank, and I will see that nobody gets it," and Drake replied that he could stick it into his pocket and take care of it himself; that Thompson told him that it looked to him like McPherrin had the best of him when he tried to make Drake pay all those notes; that he consulted Thompson alone about the situation, and he said he had better deed it over and get it covered up; that he asked Thompson to whom he should deed it, and he said he did not know; that he then asked him about deeding it to Sarah Thompson, and he said that would be fine; that he (Drake) then wrote to North Platte to have deeds made out, and deeds were prepared accordingly; that Thompson took him to a notary public or justice of the peace at Estherville, some 14 miles distant, where he signed and acknowledged the deeds to Sarah Thompson and mailed them to the register of deeds for recording.

On the other hand, Mr. and Mrs. Edward J. McPherrin testified that in 1921, shortly before the complainant went to Thompson's home to make the long visit, McPherrin and he were heavily in debt and did not know how to pay out, and Drake said, "The thing for us to do is for you to put the land in your wife's name and mortgage the personal property for all that it can be." John R. Thompson testified that his acquaintance with the complainant was an ordinary social acquaintance; that Drake had never consulted him about his business transactions prior to his visit in 1921–1922; that during that visit the complainant talked with him about his affairs with McPherrin, told him about them, and what he was going to do; that he had a talk with him about it when Miss Thompson was present, and Drake said he had signed notes with McPherrin, and he did not think he ought to pay them, and he wanted to deed the land to Sarah, and he (Thompson) told him, "You had better pay your honest debts and keep your own land;" that he never advised him at any time to follow a different procedure; that when he went to Estherville he went in complainant's car, and complainant drove; and that the deed was made by complainant to Sarah against his advice. Sarah

Thompson testified that she did not want complainant to deed the land to her, and wanted him to deed it to his mother or some one else, and that her brother John told him not to change the title before he made out the deed to her, and to keep the land and pay his debts; but complainant said he wasn't going to pay any more of McPherrin's debts. She further testified that in February, 1922, when the complainant was closing his visit, John R. Thompson asked him if he did not want the deed back on this land, and he answered he did not think that was necessary; that Thompson said, "What if something should happen to you?" and complainant replied that, if anything happened, he would just as soon see Sarah have it as anybody.

[8] The substantial evidence on this issue of fiduciary relation and undue influence of Thompson to cause him to make the deed to Sarah Thompson has now been recited, and the greater preponderance of evidence and the more persuasive evidence are against that charge, as are the findings of the chancellor below and the legal presumption in the absence of evidence.

Counsel cite rare exceptions to the established rule that a grantor who has conveyed his land to another without consideration with intent to hinder, delay, or defraud his creditors may not by suit in equity avoid his conveyance, or recover his land from his grantee or the assigns of that grantee, such as Cochran Timber Co. v. Fisher, 190 Mich. 478, 157 N. W. 282, 4 A. L. R. 9; Collins v. Schump, 16 N. M. 537, 120 P. 331; Chamberlain v. Chamberlain, 7 Cal. App. 634, 639, 95 P. 659; Barnes v. Brown, 32 Mich. 146, 153; Hoff v. Hoff, 106 Kan. 542, 549, 189 P. 613; Kleeman v. Peltzer, 17 Neb. 381, 22 N. W. 793.

In Cochran Timber Co. v. Fisher the defendant Nelson represented himself to be the authorized agent of a railroad company, and by false representations that a railroad was to be constructed near a tract of land owned by a farmer who had rented it to a tenant, induced him to enter into a fraudulent scheme to increase the rent of his tenant by conveying his land to the railroad company at a high fictitious price, in return for a subsequent deed from the railroad company to the farmer at a like price, which Nelson falsely represented was authorized by the railroad company, when it was unauthorized and worthless. The farmer was permitted to recover this land in a suit in equity on the ground that although both Nelson and he intended to deceive and defraud the tenant, the farmer was the more excusable of the two. On the same ground a recovery was permitted in Barnes v. Brown, 32 Mich. 146, 153, but the complainant in this case cannot maintain his suit under this exception to the rule, because he conceived, suggested, and executed the scheme to convey his property to Miss Thompson to delay and defraud his creditors, and Miss Thompson and not he was the more excusable of the two.

In Collins v. Schump, the plaintiff owed nothing, but a bank had sued her husband. A neighbor induced her, by fear of loss of her land on account of that suit, and by a promise, which she did not intend to perform, to convey her land back to her, to deed her land to this neighbor, and the plaintiff was permitted to recover the land in a suit in equity. Like recoveries were permitted where the plaintiffs had been scared into conveying their property without consideration by fears of imaginery debts, suits, or loss of property instilled into their minds by designing grantees, in Chamberlain v. Chamberlain, 7 Cal. App. 634, 639, 95 P. 659, Hoff v. Hoff, 106 Kan. 542, 549, 189 P. 613, Kleeman v. Peltzer, 17 Neb. 381, 385, 22 N. W. 793, and in other cases. But in none of these cases was the originator and executor of the scheme to delay or defraud his creditors permitted to recover in equity, and the case at bar does not fall among the exceptions, but under the general rule, and the decree must be affirmed.

It is so ordered.